STATE OF MAINE                                                    SUPERIOR COURT
CUMBERLAND, ss.                                                      CIVIL ACTION
                                                              DOCKET NO. CV-97-353
                                                              TDW-CUM-6/3/2000

DOYLE'S OFFICE EQUIPMENT,

       Plaintiff

v.                                           ORDER ON MOTION FOR CONTEMPT

GERALD SURETTE,

       Defendant

Before the court is a motion by plaintiff Doyle's Office Equipment for contempt based on alleged violations of a consent order enjoining defendant Gerald Surette from "soliciting or attempting to solicit any customers of Doyle's which defendant knew existed as of the time of Mr. Surette's termination from Doyle's on April 9, 1997."

The consent order was originally entered orally on the record in open court on July 22, 1998. On August 19, 1998, Surette, unhappy because Doyle's apparently took a copy of a document that Surette had provided to Doyle's as part of settlement discussions and faxed that document to the State Purchasing Office in an effort to deny Surette a contract that Surette was attempting to obtain from the State, moved for relief from the injunction and for dismissal of the case. Specifically, Surette's motion stated that if Doyle's was free to solicit or attempt to solicit his clients, he should be released from the injunction and have an equal opportunity to do same. The court (Cole, J.) denied Surette's motion on September 30, 1998 and on the same

date entered a written order incorporating the injunction that Surette had previously orally agreed to.

On January 13, 1999, alleging that Surette had violated the injunction by soliciting library officials at Bowdoin and Colby to sell Canon equipment, Doyle's brought the instant motion. A hearing was held before the court, sitting without a jury, on April 14, 1999. Based upon the evidence and testimony offered at that hearing, the court finds as follows:

On a motion for contempt seeking remedial sanctions, as in this case, disobedience to an existing court order must be proven by clear and convincing evidence. See M.R.Civ.P. 66(d)(2)(D). Moreover, any ambiguity in the court order must be interpreted in the light most favorable to the party charged with contempt. E.g., NBA Properties, Inc. v. Gold, 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.).

1.    Colby Transaction

At some point in early 1998 Eileen Fredette, Circulation Supervisor at the Colby College Library, had found Surette through the internet, where he was listed under the name Affordable Business Machines,[1] and inquired if he could fix a fax machine belonging to Colby. Surette made a service call and in response to Fredette's further inquiries, advised her he could also service micrographic

---

[1]    It is undisputed that Colby was a customer of Doyle's when Surette worked there prior to May of 1997 and that Surette knew Colby was a Doyle's customer at that time. Indeed, Fredette testified that she had met Surette at Colby when Surette was working for Doyle's. However, the court finds that Fredette initiated contact with Surette in September 1998 after finding his listing on the internet, as she testified.

2

equipment. Ms. Fredette was not happy with the responsiveness of the service she was receiving from Doyle's at that time.

In late September 1998, while Surette's motion to be relieved of the July 22, 1998 injunction was pending, Colby again contacted Surette to inquire if he could provide service for Colby micrographic equipment that had previously been serviced by Doyle's. In October 1998 Surette went to Colby, met with library staff, provided references, and advised them he would attempt to respond to all service requests within 24 hours. As a result, Surette received a maintenance and repair contract from Colby covering micrographic equipment[2] that began in November 1998 (when the contract previously held by Doyle's expired) and ran through October 1999. Surette was not purely passive in responding to Colby's inquiries; he wanted the service contract and sought to obtain it. However, it was Colby, motivated by its unhappiness with Doyle's, who initiated contact with Surette and actively sought to determine whether he could perform the contract. Colby, not Surette, made the solicitation in September and October 1998.[3]

At the October 1998 meeting Colby representatives asked Surette whether he could provide Colby certain new Canon micrographic equipment if Colby wanted to purchase such equipment. Surette responded affirmatively, and subsequently Colby

---

[2] Micrographic equipment is equipment used to create microfilms and microfiche records.

[3] Fredette testified that, after she had contacted him in the Spring of 1998 about providing service for the fax machine (an item not serviced by Doyle's according to the evidence in this case), Surette told her, "if I can be of service, please call". This comment illustrate the difficulty of the injunction in this case. Given that the evidence was that Colby was the initiator at all stages, the court cannot find that the above quoted statement by Surette constituted solicitation in violation of the injunction.

3

contacted Surette and told him that it did in fact wish to purchase some new equipment. Once again, Colby was the initiator but, once solicited by Colby, Surette made every effort to make the sale. He provided a quote to Colby for an MS500 Microscanner and various other equipment in late October and in fact sold Colby a MS400 in early December for $5,700.[4] Because Surette, unlike Doyle's, is not an authorized Canon dealer, Surette had to obtain the machine he provided to Colby from a Canon dealer in New York City, who nominally sold the equipment to a company named Superior, Inc., which in turn provided it to Surette.[5]

2. Other Transactions

Since the entry of the injunction, Surette has engaged in various other transactions with present and former customers of Doyle's. He testified that Bowdoin College library officials contacted him to see if he could provide them with similar equipment to the equipment purchased by Colby and that, although he exchanged various telephone calls with Leanne Pander of Bowdoin, Bowdoin ultimately ended up leasing rather than purchasing the equipment in question, apparently from Doyle's. Although Steven Doyle testified that he had lost some or all of his expected profit on this transaction because of competition from Surette, the court finds from the evidence that Surette's role with respect to Bowdoin was

---

[4]   Doyle's also provided a quote to Colby on an MS400 which was $75.00 less than the amount paid to Surette.

[5]   The transaction appears to have been structured in this manner to evade limitations on the sale of Canon products by persons other than authorized dealers. The court is aware that there are some legal issues pending between Doyle's and Canon on this subject.

4

similar to his role in the several Colby transactions in that the initial contact-or solicitation was made by Bowdoin and Surette responded in a manner that he hoped would allow him to make a sale.

There was evidence that Northeast Bank, known by Surette to be a prior customer of Doyle's, ceased having certain of its machines serviced by Doyle's and instead looked to Surette for service at some point after the injunction. Northeast Bank also obtained a piece of equipment called an endorser from Surette. The only evidence as to who initiated the contact with Surette, however, came from Surette, and he said that Northeast Bank had contacted him when it was unhappy with a quote it had received from Doyle's.

The other customers of Doyle's with whom Surette had dealings were the Department of Human Services and the Department of Environmental Protection. A transaction with DEP was already underway at the time the July 22, 1998 injunction was entered, and Doyle's did not press any claim that Surette's actions in completing that transaction constituted solicitation in violation of the injunction. With respect to the Department of Human Services, Surette testified that he did not remember DHS as a customer of Doyle's and that the Department had initially contacted him to service some equipment. While on site at DHS performing a service call, Surette learned that the Department was seeking to buy a microprinter and that it had received a quote from Doyle's for $3,200. Surette then told DHS officials that he had then told DHS officials that he had a used microprinter which he would sell to them for $995, which he eventually did.

5

Whether the above facts constitute clear and convincing evidence that Surette violated the injunction depends on whether Surette's conduct constituted "soliciting or attempting to solicit" known customers of Doyle's. In the context of soliciting a person or entity, the pertinent dictionary definition of solicit is "2. to entreat or petition (a person) for, or to do, something; to urge, importune, to ask earnestly or persistently". Oxford English Dictionary (2d ed. 1989). That definition does not entirely answer the question presented in this case -- whether a party can be found to have solicited business even if a customer initiates contact and first solicits an offer. In resolving this issue the court notes that "solicit" was the term chosen by the parties in this case. The injunction did not provide -- although it could have if that had been the parties' intent -- that Surette was forbidden to do any business with known customers of Doyle's. To find a violation of the injunction just because Surette responded positively and even eagerly to contacts initiated by customers would in effect convert the injunction into an order that Surette not do business with known Doyle's customers.

Interpreting the injunction, therefore, to require that a violation be based on more than enthusiastic responses from Surette to contacts initiated by a customer, see NBA Properties, Inc. v. Gold, 895 F.2d at 32, the court cannot find by clear and convincing evidence that Surette violated the injunction in connection with the Colby transaction. Colby initiated contact with Surette, solicited services from Surette, and then solicited a bid from Surette for new equipment. That Surette responded eagerly to Colby and sought to give the most favorable responses to

6

solicitations by Colby does not constitute a violation of the injunction. The court does not find, for example, that the injunction required Surette to remain mute when he was asked by Colby if he could provide references.

With respect to Northeast Bank, no evidence was offered to rebut Surette's assertion that Northeast, not Surette, did the soliciting. Moreover, while the court might have reason to be skeptical of Surette's assertions, the fact that similar assertions by Surette were borne out with respect to Colby means that the court certainly cannot find clear and convincing evidence that Surette violated the injunction with respect to Northeast Bank. Once again, the court construes the wording of the injunction to allow Surette to conduct business with known Surette customers so long as those customers came to him and so long as he limited himself to responding (even if he did so with considerable salesmanship) when the customers solicited offers from him for equipment or services.[6]

DHS presents a different situation. Although DHS initiated contact with Surette and sought to have him perform services, the evidence demonstrated that it was Surette who volunteered that he could sell them equipment as well. Originally solicited by DHS and having gotten his foot in the door, Surette took the opportunity to solicit additional business from DHS. The court would be inclined to find that this constituted a violation of the injunction but for the fact that Doyle's offered no evidence to rebut Surette's testimony that he had not known DHS was a

---

[6] To the extent that Doyle's is arguing that Surette's August 19, 1998 motion to be relieved of the injunction construed the term "solicit" in a manner inconsistent with this interpretation, the court disagrees. In that motion, Surette complained that Doyle's was soliciting a client of his because Doyle's had initiated contact with the client in an effort to deny Surette a contract. This is not inconsistent with the interpretation of "solicitation" in this order.

7

customer of Doyle's at the time he worked there. Under these circumstances, the court is unable to find clear and convincing evidence that Surette violated the injunction with respect to DHS.

However, the court disagrees with Surette's apparent position, stated in closing argument, that so long as a known customer of Doyle's initiates any contact whatsoever with Surette, no matter how slight or on what subject, Surette is thereafter free to take whatever action he can to sell services or equipment to that customer without any liability under the injunction. Under the existing injunction, as the court has construed it, Surette is free to respond favorably if a person or entity he knew to be a Doyle's customer on April 9, 1997 solicits service or equipment from Surette, but he may not petition those customers to give him any business they have not asked for.

The court fully recognizes that this is an unsatisfactory result from the point of view of Doyle's and that it may permit Surette to evade the spirit of the injunction even if he keeps to the letter. This result, however, is dictated by the wording of the injunction -- chosen by the parties, not the court -- by the principle that ambiguities are to be construed in favor of a party charged with contempt, and by the clear and convincing evidence standard in M.R.Civ.P. 66(d)(2)(D).

Left unresolved by this order are several matters: (1) the ultimate fate of the certain information with respect to Surette's transactions that the court ordered temporarily impounded and (2) whether any sanctions should be imposed against

8

Surette for his failure to appear for deposition.[7] Plaintiff is encouraged to make the appropriate motions to resolve those issues as soon as possible. In addition, the court would request the positions of the parties on two other issues: (1) whether the injunction can or should be clarified in light of the above ruling and (2) whether in any case it should be terminated at some point in time.

Plaintiff's motion for contempt denied. The clerk is directed to incorporate this order in the docket by reference pursuant to M.R.Civ.P. 79(a).


Dated: _Jun 2_, 2000                    _____
                                        Thomas D. Warren
                                        Justice, Superior Court

---

[7]    The court has concluded that no sanction shall be imposed for defendant's failure to attend the March 17, 2000 trial management conference in light of the submissions of the parties on that issue.

9

Date Filed __06-06-97__     <u>CUMBERLAND</u>     Docket No. __CV97-353__

County

Action __CONTRACT__

DOYLE'S OFFICE EQUIPMENT             GERALD R. SURETTE

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JOHN S. CAMPBELL ESQ<br>PO BOX 369<br>PORTLAND ME 04112<br>775-2330 | GERALD SURETTE    PRO SE |

Date of
Entry